IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| SID CHILDRESS, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>            Defendant. | NO. 1:17-cv-01051-LF-KBM<br><br>**DEMAND FOR JURY** |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Sid Childress ("Plaintiff") by his undersigned counsel, for this class action Complaint against Defendant, Liberty Mutual Insurance Company ("Liberty Mutual" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities, alleges as follows:

### I.    INTRODUCTION

1. <u>Nature of Action</u>. Plaintiff, individually and as a class representative for all others similarly situated, brings this action against Liberty Mutual for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368, 372 (2012). Plaintiff alleges that Liberty Mutual, itself or through a third party, made a pre-recorded call using an automatic telephone dialing system ("ATDS") to a cellular telephone number belonging to Plaintiff for the purpose of advertising Liberty Mutual's goods and services, in violation of the TCPA.

### II.    PARTIES

2. Plaintiff Sid Childress is a citizen of New Mexico, residing in Santa Fe County, New Mexico.

3. Defendant Liberty Mutual is a Delaware corporation with its headquarters in Boston, Massachusetts. Liberty Mutual is registered to do and is doing business in New Mexico and throughout the United States.

### III.   JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.

5. This Court has personal jurisdiction over Liberty Mutual because it has submitted to New Mexico jurisdiction by registering with the Secretary of State to do business in the state of New Mexico and regularly doing business in New Mexico, and the wrongful acts alleged in this Complaint were committed in New Mexico.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were made to this District. Furthermore, venue is proper because a substantial part of property that is the subject of the action is situated in this District: the Plaintiff's cellular telephone.

### IV.   THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

**A.    The TCPA prohibits autodialed and/or prerecorded telephone calls.**

7. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7964 ¶ 1 (2015).

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service[.]" *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

9. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

10. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (July 3, 2003).

11. Beginning in 2013, prior express <u>written</u> consent is required for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, the FCC stated that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**B.     The TCPA prohibits using caller ID to hide a caller's identity.**

12.     The TCPA also recognizes that telemarketers will frequently take steps to hide their identity when making calls to consumers and explicitly prohibits the alteration of caller identification information to disguise the caller's identity. *See* 47 USC § 227(e)(1).

**C.     Vicarious liability is available under the TCPA.**

13.     Federal Communication Commission ("FCC") promulgated regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

14.     The FCC confirmed this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

15.     In that Order, the FCC instructed that sellers such as Liberty Mutual may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*Id.* at 6588 ¶ 37 (internal citations omitted).

16.     The May 2013 FCC ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

17. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

18. The May 2013 FCC ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592 ¶ 46.

## V. FACTUAL ALLEGATIONS

**A.  Factual allegations regarding Plaintiff.**

19. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

20. Plaintiff placed his cellular telephone number, (505) 433-9823, on the National Do-Not-Call Registry on June 7, 2014.

21. On August 14, 2017 at approximately 10:22 a.m. Plaintiff received a call on his cellular telephone from, or on behalf of, Liberty Mutual.

22. The caller ID showed the telephone call was from "505-780-9813, Santa Fe, NM."

23. Since the caller ID showed a call from a local area code, Plaintiff answered the call. Plaintiff believed the call was coming from a local person or business. Plaintiff suspects that

the caller ID was deliberately altered to appear to Plaintiff that the call was coming from a local phone number in order to entice the Plaintiff to answer the call by disguising the identity of the caller.

24. When Plaintiff answered the call, there was a lengthy pause and a click followed by silence before any voice came on the line, which indicated to him that the call was made using an ATDS.

25. Following the lengthy pause, click, and extended silence, a prerecorded message played identifying the caller as "Jason" of "Cheap Insurance Experts." On information and belief, no such company exists.

26. The prerecorded message asked the called party prerecorded questions. In an attempt to further determine the identity of the caller, Plaintiff answered one or more questions asked by the prerecorded message. After answering them, Plaintiff was transferred to a live person, who identified himself as a Liberty Mutual employee named "Steve Ross."

27. Steve Ross informed Plaintiff that Mr. Ross worked for Liberty Mutual at a call center located in Dallas, Texas.

28. Steve Ross also informed Plaintiff that the purpose of the call was to sell Plaintiff Liberty Mutual auto insurance.

29. During the call, Plaintiff requested information from Steve Ross regarding the name of the third party company that had initially contacted him. Plaintiff also requested information regarding why he received a robocall from Liberty Mutual.

30. In response to these inquiries from Plaintiff, Steve Ross disconnected the call.

31. Plaintiff has never done business with Liberty Mutual nor has he ever provided Liberty Mutual with his cellular telephone number.

32. Furthermore, Plaintiff did not provide prior express written consent to receive ATDS-generated and/or prerecorded calls on his cellular telephone line from, or on behalf of, Liberty Mutual.

33. Liberty Mutual is responsible for the above-described ATDS-generated and/or prerecorded call.

34. Liberty Mutual has made a significant number of ATDS-generated and/or automated or prerecorded calls to persons on their cellular telephones in New Mexico and throughout the entire United States.

35. Liberty Mutual intends to continue to make similar ATDS-generated and/or automated or prerecorded calls to persons on their cellular telephones in New Mexico and throughout the entire United States.

36. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Liberty Mutual because their privacy has been violated, they were subjected to annoying and harassing calls that constitute a nuisance, and they were charged for incoming calls. The calls also occupied Plaintiff's and all members of the Class's cellular telephone lines, preventing them from receiving legitimate communications.

**B.  Liberty Mutual is liable for the calls to Plaintiff and the proposed Class.**

37. Liberty Mutual is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

38. Liberty Mutual is an American diversified global insurer and the second-largest property and casualty insurer in the United States. *See* http://www.naic.org/documents/web_market_share_150302_2014_property_lob.pdf (last visited November 27, 2017).

39. Liberty Mutual offers a wide range of insurance products and services. Its "Global Consumer Markets business unit sells automobile, homeowners, and other types of property and casualty insurance coverages to individuals in the United States." *See* http://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=162456 (last visited November 27, 2017).

40. Liberty Mutual contracts with third party telemarketers to increase the volume of its customers.

41. Part of the strategy of these third party telemarketers for increasing the volume of Liberty Mutual' s customers involves placing calls using an ATDS and/or prerecorded messages to solicit business.

42. On information and belief, these third party telemarketers have contractual relationships with Liberty Mutual that permit them to transfer prospective customers directly to Liberty Mutual's call centers.

43. Under the standards outlined in the FCC's Order, and by other Courts interpreting that Order, Liberty Mutual is directly liable to Plaintiff and members of the Classes as well as vicariously liable through theories of agency such as actual authority and ratification.

    a. <u>Liberty Mutual is directly liable for calls to Plaintiff and the proposed Class.</u>

44. Although a third party telemarketer made the call to Plaintiff, Liberty Mutual also actively participated in the call, as the call was transferred to one of its employees after the prerecorded message. As a result, Liberty Mutual is directly liable for the call.

45. Liberty Mutual also participated in the call by setting the guidelines and parameters for customers who would be acceptable for telemarketers to transfer to Liberty Mutual.

46. Liberty Mutual is also directly liable for the ATDS-generated and/or prerecorded telemarketing call because it actively participated in the call by "allow[ing] the outside sales entity access to information and systems that normally would be within the seller's exclusive control," when it allowed the telemarketer access to its telemarketing calling system in order to automatically transfer the Plaintiff to a Liberty Mutual representative during the call.

47. Liberty Mutual may also be directly liable for the prerecorded call if it placed the prerecorded call through a third party it controls. In fact, Liberty Mutual, identified by "Steve

Ross" in Dallas, Texas, is the first legitimate company that was identified in the telemarketing call to Plaintiff.

      b.  <u>Liberty Mutual is vicariously liable for calls to Plaintiff and the proposed Class.</u>

48. Liberty Mutual is legally responsible for ensuring that its third party telemarketers' telemarketing activities comply with the TCPA, even if Liberty Mutual does not make the calls themselves.

49. Liberty Mutual maintains interim control over the third party telemarketers' actions as to telemarketing and other activities by directing the content of their agents' advertising as well as dictating the parameters for potential prospects that they would accept.

50. Liberty Mutual knew (or reasonably should have known) that the third party was violating the TCPA on its behalf, and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts "warm transfer" calls from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

51. Liberty Mutual ratified these third party telemarketers' actions by accepting the benefits of their activities through accepting prospective customers generated through illegal telemarketing activities. Indeed, a Liberty Mutual employee marketed its products and services to Plaintiff on the call at issue.

52. The FCC has also stated that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## VI.     CLASS ACTION ALLEGATIONS

53.     <u>Class Definition</u>.  Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this case as a class action on behalf a Class defined as follows:

> All persons in the United States to whom: (a) Liberty Mutual and/or a third party acting on Liberty Mutual's behalf, made one or more non-emergency telephone calls; (b) for purposes of promoting Liberty Mutual's products or services; (c) to their cellular telephone numbers; (d) using an automatic telephone dialing system and/or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Excluded from Class are Liberty Mutual, any entity in which Liberty Mutual has a controlling interest or that has a controlling interest in Liberty Mutual, and Liberty Mutual's legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

54.     <u>Numerosity</u>.  The Classes are each so numerous that joinder of all members is impracticable. The automated technology used to contact the Plaintiff is capable of contacting hundreds of thousands of people a day. On information and belief, the Class has more than 100 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

55.     <u>Commonality</u>.  There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

      a.     Whether Liberty Mutual and/or its affiliates, agents, and/or other persons or entities acting on Liberty Mutual's behalf violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS and/or artificial or prerecorded voice;

      b.     Whether Liberty Mutual and/or its affiliates, agents, and/or other persons or entities acting on Liberty Mutual's behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number

using an ATDS and/or artificial or prerecorded voice, thus entitling Plaintiff and the Class to treble damages;

   c. Whether Liberty Mutual is liable for ATDS-generated and/or automated or prerecorded calls promoting Liberty Mutual's products or services made by Liberty Mutual's affiliates, agents, and/or other persons or entities acting on Liberty Mutual's behalf;

   d. Whether Liberty Mutual and/or its affiliates, agents, and/or other persons or entities acting on Liberty Mutual's behalf should be enjoined from violating the TCPA in the future.

  56. <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims, like the claims of Class, arise out of the same common course of conduct by Liberty Mutual and are based on the same legal and remedial theories.

  57. <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel have interests that are contrary to or that conflict with those of the proposed Class.

  58. <u>Predominance</u>.  Liberty Mutual has engaged in a common course of conduct toward Plaintiff and members of the Class. The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

  59. <u>Superiority</u>.  A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Liberty Mutual to comply with the TCPA. The interest of individual members of the Class in individually controlling the prosecution of separate claims against Liberty Mutual are small because the damages in an individual action for violation of the TCPA are small. Management of these

claims is likely to present significantly fewer difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

60. <u>Injunctive and Declaratory Relief Appropriate</u>. Liberty Mutual has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis. Moreover, on information and belief, Plaintiff alleges that the ATDS-generated and/or prerecorded calls made by Liberty Mutual and/or its affiliates, agents, and/or other persons or entities acting on Liberty Mutual's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VII. FIRST CLAIM FOR RELIEF
**(Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))**

61. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

62. The foregoing acts and omissions of Liberty Mutual and/or its affiliates, agents, and/or other persons or entities acting on Liberty Mutual's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or an artificial or prerecorded voice.

63. As a result of Liberty Mutual's and/or its affiliates, agents, and/or other persons or entities acting on Liberty Mutual's behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

64.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Liberty Mutual and/or its affiliates, agents, and/or other persons or entities acting on Liberty Mutual's behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## VIII.  SECOND CLAIM FOR RELIEF
### (Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

65.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

66.     The foregoing acts and omissions of Liberty Mutual and/or its affiliates, agents, and/or other persons or entities acting on Liberty Mutual's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or an artificial or prerecorded voice.

67.     As a result of Liberty Mutual's and/or its affiliates, agents, and/or other persons or entities acting on Liberty Mutual's behalf's knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers using an ATDS and/or an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the members of the Class, prays for judgment against Liberty Mutual as follows:

   A.     Certification of the proposed Class;

   B.     Appointment of Plaintiff as representative of the Class;

   C.     Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Liberty Mutual and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Liberty Mutual and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. An award to Plaintiff and the Class of attorneys' fees and costs, as allowed by law and/or equity;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## X. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.


Dated: December 8, 2017.               Respectfully submitted,

                                       BRODERICK & PARONICH, P.C.

                                       By:  /s/ Anthony Paronich
                                            Anthony Paronich
                                            Email: anthony@broderick-law.com
                                            99 High Street, Suite 304
                                            Boston, Massachusetts 02110
                                            Telephone: (508) 221-1510
                                            Facsimile: (617) 830-0327

                                            Clayton Crowley
                                            Email: cec@crowleygribble.com
                                            Crowley & Gribble PC
                                            4811 Hardware Dr. Ne Ste D-5
                                            Albuquerque, NM 87109
                                            Telephone: (505) 314-1450

                                            Matthew P. McCue
                                            Email: mmccue@massattorneys.net
                                            THE LAW OFFICE OF MATTHEW P. MCCUE
                                            1 South Avenue

        Natick, Massachusetts 01760
        Telephone: (508) 655-1415
        Facsimile: (508) 319-3077
        *Subject to Pro Hac Vice*

        Beth E. Terrell
        Email: bterrell@terrellmarshall.com
        Jennifer Rust Murray
        Email: jmurray@terrellmarshall.com
        Elizabeth A. Adams
        Email: eadams@terrellmarshall.com
        TERRELL MARSHALL LAW GROUP PLLC
        936 North 34th Street, Suite 300
        Seattle, Washington 98103-8869
        Telephone: (206) 816-6603
        Facsimile: (206) 319-5450
        *Subject to Pro Hac Vice*

        *Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2017, I filed the foregoing with the Clerk of Court, which will automatically send notification of such filing to all attorneys of record by placing the same on the Court's electronic docket.

        */s/ Anthony Paronich*
        Anthony Paronich